By the Court.
Hoffman, J.
—The term average was borrowed from the foreign law; and in that law it indicated every chance damage which happened to the merchandise or the ship. Average was such a loss. (Emer., 463, and the authors cited by him.) It excluded, from its very character, an absolute total loss. The ordinance of the marine of 1688 showed this in a plain form. (Art. 46.) Abandonment was applicable to cases of total loss. Average comprised all the minor disasters causing damage to the thing insured. (Emer., ut supra, and 468.)
The 397th section of the Code of Commerce follows out this •definition with marked exactness. It speaks of the term avaries thus: “ All extraordinary expenses incurred for the ship and the cargo conjointly or separately ; all damage happening to the vessel or goods from the time of their lading and departure until their arrival and discharge are reputed averages. There are two classes of averages, gross or common (general), and simple or particular averages.”
In entire conformity with this description in the foreign law, there has grown up into English mercantile language and English mercantile law a two-fold meaning of the term average. The distinction is, between a particular and a general average. The first is that loss which falls solely upon a particular subject; the second is that damage or liability which falls upon property in question, by reason of an injury to something else.
Molloy does however define the term as used in the mercantile law to be, the contribution made proportionably, by others, to those who have their goods east into the sea, for general *395 safety. It is made he says, “ after the rate of every man’s ave-ridge, or goods carried.” (De jure Maratimo, ch. 6, 5.)
Cowell’s Interpreter, quoted by Mr. Stevens, adopts a similar meaning for the phrase. (Step. & Ben. on Average, Boston Ed., 1883, p. 56.) “ What we term general average is the only case entitled to the appellation of average. A particular loss is no average at all.” (1 Rob. Ad. Rep., 293.)
But at page 39 he says, “ By the continental law all losses not total are said to be average losses, and so the Courts in this country use the term.”
Particular average and general average, are terms pervading the whole mercantile law, and decisions of England and this country. Particular average is the damage or loss, short of total, falling directly upon a particular property. General average is the liability or claim falling upon that property, from the loss of or damage to something else.
Average then, in its generic sense, and used simpliciter, is a loss, injury or deduction, not amounting to a total loss, and then when the parties to a policy agree that goods insured shall be free from average, they agree that the liability of the insurers shall only arise when a total loss shall occur.
This is the plain import and legal effect of the clause in writing in the first part of the policy in question. The insurance is made “ on 4,650 bushels of corn in bags, free from average.”
But then we find the clause, that in no case shall the insurers be liable for a partial loss, unless it exceed five per cent. So they would be liable under this clause for any such loss exceeding such rate. Yet the first clause exempts them from it.
Again, in the memorandum clause we have the provision 11 that grain of all kinds shall be free from average unless general.”
I think it clear that this clause supersedes entirely the clause as to a partial loss over five per cent. It is a qualification as to particular articles of the general provision, and com is one of such articles.
And then it follows, that the case is to be determined by a comparison of this clause in the memorandum, with the first written clause in the policy. In substance the contract reads thus; We agree to insure this particular parcel of corn shipped *396 on board the Helen Mar, from any loss which shall be total in its nature, but not from any partial loss or other damage which it may be subjected to; and then we agree to insure any grain laden by you on board the Helen Mar, from a. total loss, and also from any damage you may sustain by reason of a loss creating a case for contribution or general average.
I am not able to reconcile these provisions. The question is, which must give way ?
That question is fully settled. The written words control the printed formula of a policy wherever there is a discrepancy. Mr. Duer states the rule to be that the inconsistent printed clause must be so limited or modified as to render it consistent with the written; or, if by no construction they can be reconciled must be wholly rejected.” (Duer on Ins., vol. 1,166, citing Emer., and Lord Ellerbororgh in Robertson v. French, 4 East., 136.)
The parol evidence offered in this case was we think correctly rejected. The phrase has no uncertain or ambiguous mean- - ing. The question simply is, does the written clause remain unaffected by the printed formula.
The judgment should be affirmed, with costs of the appeal.
Bosworth, J.
—An insurance upon articles declared by the policy to be “free from average,” or which, by the terms of the policy, “ are warranted by the assured free from average,” is, in effect, an insurance against their total loss only; according to the meaning of the words, “total loss,” as used in the law of insurance, applicable to memorandum articles. (Maggrath v. Church, 1 Caines’ Rep., 196; Neilson v. Columbian Ins. Co., 3 id., 108; Saltus v. Ocean Ins. Co., 14 J. R., 138; Marcardier v. Chesapeake Ins. Co., 8 Crunch, 39; Coster v. The Phoenix Ins. Co., 2 Wash. C. C. R., 51; Morean v. United States Ins. Co., 1 Wheat., 219.)
By the terms of the printed part of the policy, the defendants would not have been liable for any partial loss, whether in the nature of a general average loss or otherwise, were it not for the qualifying words, “ unless general.”
These have the effect to make the insurance company liable for all general average losses chargeable upon the cargo insured.
The words “free from average,” inserted in the policy, in *397 writing, should be so construed, if practicable, that effect maybe given to them, according to their meaning in such contracts, as settled by judicial exposition. When, giving them that meaning, they conflict with some customary provision in the printed part of the policy, the latter must be rejected and the written provision be allowed to prevail.
The insertion in writing of the words, “free from average,” is equivalent to a declaration of the parties, embodied in and made part of their contract, to this effect: We agree, with respect to the com in question, that no claim shall be made upon the insurance company for, any loss or damage which is partial only, whether it be in the nature of a general .average loss, or a partial injury of the corn itself.
We think therefore that, the Judge at the trial proceeded upon a correct view of the law.
Independent of other objections to the evidence offered, to show the meaning of the words “ free from average,” it is sufficient to say that evidenceof such a character is not admissible, for the purpose of attaching to those words, when forming part of a written contract, a meaning in conflict with, or variant from that given to them by adjudged cases; by which their meaning, in precisely such contracts has been determined and was a point in judgment.
No usage can exist or be proved by which the liabilities of parties to a written contract will be greater or less, than the settled law of the state has adjudged them to be, on a contract in the terms of the one-sought to=be affected by such evidence.
The judgment must be affirmed.
Judgment -affirmed.